All right, good afternoon everyone. We have Judges Hamilton and Brennan on Zoom. I'm here in the courtroom and the attorneys are on Zoom and I'll call our only case this afternoon for argument, United States v. Zhao. Mr. Linehan. Yes, Your Honor. You may proceed whenever you're ready. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is Patrick Linehan. I am asking this court to vacate the verdict below and enter a judgment of acquittal as to all counts four through seven of the superseding indictment. Dr. Zhao's case is one of the last China Initiative case brought against Chinese origin academics that's still in litigation. For context, Dr. Zhao was originally charged with two counts of wire fraud, one count of 1001A2 arising from his role on the submission of a National Science Foundation grant application and related communications with NSF relating to that application. Although trial was set for, originally set for October 2021, less than three weeks before the first trial date, the government made good on a prior threat to file tax charges against Dr. Zhao if he rejected its prior plea offer, which he did. While the government failed to convince the fact finders of Dr. Zhao's guilt in any of the charges related to the alleged grant fraud, it's Dr. Zhao's conviction of those tacked on tax charges that are the subject of this appeal. The court should vacate the tax fraud charges levied against Dr. Zhao and enter a judgment of acquittal in his favor for all the reasons set forth in our briefing, but most critically for the two reasons I wanted to focus on primarily today, subject of course to any questions the court might have. First, Dr. Zhao's conviction on the four counts concerning both Dr. Zhao's response to a specific question on tax return submitted in 2017, 18, and 19, and his failure to file an FBAR in the 2019, for the 2019 tax year are not sufficiently supported by the limited and strained circumstantial evidence of willfulness presented at trial. Second, and if time permits, I'd like to address the argument that the counts based on the joint tax returns were based on a fundamentally ambiguous question involving the consultation of disparate, requiring the consultation of disparate portions of the tax code from multiple government sources. With respect to the insufficiency of the evidence, the court is tasked with ensuring that all convictions are supported by sufficient evidence of guilt beyond a reasonable doubt, and as it's stated in the Garcia, the court, quote, must take special care to guard against the possibility that a defendant may be found guilty by either speculation or mere association. Put differently, in Jones, the conviction must be reversed when the government has failed to connect. Mr. Cunningham, with respect to speculation, you assert in your brief that you refer to the TurboTax software, quote, purportedly used by Dr. Zhao. Are you actually contending that there isn't necessarily a reasonable doubt as to whether Dr. Zhao filed these returns? Well, Your Honor, our contention, the answer is yes. Our contention is that we don't think the evidence is sufficient. Given the documentary evidence and the admissions he made in the interview with the agents, why could a jury not reasonably find that when he said he did his own taxes, used TurboTax to do it, and these returns are filed with his information? What is the non-speculative doubt? So I think the non-speculative doubt, first of all, I think that, Your Honor, the statements during his interview could be construed as him using TurboTax generally, as well as I being sort of I and his wife. They were joint tax returns. So it's unclear. I think the evidence is unclear as to whether it was he or his wife that filed the joint tax returns. I don't think the evidence convincingly establishes that. A jury could not treat that I do my own taxes as his admission that he did it? I think even if you were to say that I did his own taxes, I'm not sure. He did not say that he did his own taxes for those particular years. And I would say, Your Honor, I don't think. Well, you seem to be asking us to go a very long way to down the road of jury argument in rejecting those kinds of facts. So, Your Honor, I think that the insufficiency argument as to whether Dr. Zhao prepared those tax returns, I think it's a much closer call than the evidence of whether the evidence of willfulness is sufficient. I take Your Honor's point that the evidence is much closer to the line and that a jury may possibly infer that those that those statements would implicate Dr. Zhao as having prepared the tax, having used used TurboTax and prepared those tax returns himself for those particular years. But I don't think the evidence is altogether clear on that. But if I can, if I can return to the question of willfulness, the question of whether the We believe that the government fell meaningfully short of that burden, improving willfulness as to those sections, 72-06-1 charges as recognized in Cheek. Willfulness is a critical element in the criminal context, criminal tax context. In fact, as Cheek recognizes, Congress, foreseeing that ordinary citizens like Dr. Zhao may make innocent state, innocent mistakes while muddling through our complex tax code, took care to And we believe that this case presents a perfect example of the type of prosecutions that the willfulness requirement was meant to shield against. Now, to recap the language of the tax return question at issue, it's the question was this at any time during the relevant tax year, did you have a financial interest in or signature authority over a financial account such as a bank account, securities account or brokerage account located in a foreign country? As this language makes clear, and I will address in more detail in a few minutes, what accounts this language covers is far from self-evident. It doesn't ask simply whether a taxpayer has a foreign bank account, but whether there is a foreign bank account in which he is either a financial interest in or signatory authority over. Both of those terms do not have an obvious meaning to the ordinary taxpayer and in fact are defined elsewhere deep within the tax regulations and regulated guidance and far from the physical return form itself or the computer screens running TurboTax. As as I'm sorry to go ahead on that particular point, Mr. Linehan, even if you're parsing of the question, even if we were to grant that argument, how is the TurboTax tax question not straightforward? The TurboTax question is much less complex than the question 7A as you as you've read it off. Yes. And Judge Brennan, I agree with that. I do think that the position of the government at trial was that not only did Dr. Xiao complete the TurboTax program, but also signed the tax return and in signing the tax return, one, the signer attests that he has reviewed the tax form. If you assume that Dr. Xiao reviewed the tax form as well as completed the TurboTax form, you have to use the logical assumption is that he read the he read the question in TurboTax in the context of what set up the text of what question 7B said, which is this financial this this financial interest which has this financial interest and signature authority argument. So in reading in reading the question and reading the question for TurboTax, I think the logical assumption what the what the evidence certainly suggested at trial, if you assume as as I think the government's position was that he did review, he signed that he did review the tax form. He saw that he saw the he saw the question 7B. He read that question in the TurboTax program against the backdrop of what question 7B actually asked. Mr. Linehan, the evidence at trial included a series of emails between your client and the two Chinese universities referring to the account as his account in which he uses that phrase to to refer to the Chinese account in question. That's right, Your Honor. Why is that? Why is that insufficient? I mean, even standing alone in the absence of all the other evidence to justify an inference of willfulness. So, Your Honor, I think that goes directly to the core of the difference that I'm suggesting there is here between the question of whether he has a foreign bank account and the question whether he has a foreign bank account where he has a financial interest or signature authority. His position in as as evidenced in his multiple statements to the FBI was that he did have a bank account. He never denied having a bank account. His his position was I didn't think the money in there was my money. I felt that was the only the only reason the only way I can use that money was when I traveled to China to reimburse myself for the travel that that the university was responsible for. So his view of the of the account was not that it was not his account. I think he I think he says that on the he says that it to the FBI agents. But his position and I don't think it's contradicted by any by by any evidence is that his position is he didn't think he had financial and a financial interest in that account because it was only money that was meant for reimbursement reimbursement for his travel which that which which the cop which the university was covering. But the documentary evidence in connection with the money he was paid by the Chinese universities the money that went into this account was that it was income. Not restricted to travel reimbursement. So I'm not sure this income wasn't I'm not sure what you're referring to your honor but I think that if this was called income on a variety of different documents I think that I think regardless of what it was called I think that I think my client did not consider it income. I think he considered it money for his reimbursement for his travel reimbursement. And I thought the jury would be the jury would be entitled to draw the inference from the documentary record where it's salary and income that he understood the nature of those payments was not restricted to travel reimbursement. But I don't think there's any evidence to suggest and if you're referring your honor to the employment contract where it talks about a salary that was that contract was made clear at trial that that was not the that was not an operative contract that contract although it was signed required him to be fully employed by sheds and he never and not to be fully employed elsewhere and he remained fully that the evidence was clear at trial he remained fully employed at the college. So even though he submit even though he signed that contract that was not a contract that he got paid under he got paid he started and he started getting paid way before that contract was even signed. I think the evidence at trial was clear on that. So any reference to the 20 2018 contract you know the any any reference to salary or income in that 2018 contract is not is not evidence that the money that he received either prior to the signing of that contract or after the signing of that contract was income because he wasn't paid under that contract that contract never became operative. What about the evidence about the manner in which he used these funds. So the so there's no evidence that he there's no evidence presented at trial that he used his funds for anything other than travel reimbursements. I thought there was evidence about investments transfer of some of this money into high yield investments rather than just letting it sit in the account. But he but he never spent any of the money. That's my point. I see your point your honor. What I'm saying is he said none of the money was ever spent and it's I don't I don't think the evidence is clear that he was he was the one that that made that investment that made that made the decision to make that investment. But it certainly wasn't a use of the money for for his own purposes. He didn't see them. He didn't he didn't view the money as his. He didn't view the money as an authority to spend with all due respect. I mean if I understand this correctly you agree that the jury was properly instructed on the chief willfulness standard. Correct. Correct. Your honor and willfulness is obviously a quintessentially factual question ordinarily has to be proved by circumstantial evidence. And I understand your tenacious assertion of your client's innocence but help me understand what's the line between jury arguments that are no rational juror could find guilt beyond a reasonable doubt here. So so if I can if I if I think the difference here is that the evidence at trial only went so far as to establish to establish that Dr. Zhao knew he had a foreign bank account. It did. There was no evidence that he established that he used it correct that he used it for that he that he had no fight. I don't think it established that he had a financial interest in it or a signatory authority at least. It was true. He had those terms. Excuse me. Excuse me. But he had a debit card. Correct. That's correct. He could just withdraw money from that account and put it in his wallet. Right. Not according not according to his view whether he can physically do that. Well he he there is evidence that these two from screenshots that these kinds of transactions occurred. Correct. Only your honor only with respect to travel related expenses while he was in China. OK. And with that I think we're I'm out of time here so I apologize your honor for going over your honors for going over. But that for those for the reasons in our brief we've we asked that the court reverse the cut reverse the lower court's motion for motion to dismiss the indictment based on fundamental ambiguity. Thank you Mr. Reid judges and may it please the court. Peter Reid for the United States. Defendants willfulness arguments are internally contradictory and go only to the weight and credibility and I'll address these as the turbo tax argument and the mistake argument defendants turbo tax argument is fundamentally contradicted by his second argument which is that he had no specific mistaken reason the evidence showed defendant knowingly and intentionally answered no on his returns and that he knew when interviewed by agents that he had checked no on his returns that he had no foreign bank accounts and just a couple examples of those government's exhibit 14 at 36 question did you put on your tax form that you have a foreign bank answer. No I didn't. At 37 you just put no on each time answer. Yeah. At 53 the question on the tax form is do you have a foreign bank account. You put no. The answer is yes. Correct. The defendant answered in the affirmative. The defendant was well aware of what he had said on his returns. He simply offered this alternative explanation for why he did that. And I'll address that in a moment as as a good faith. And this is the argument raised by Mr. Money that that the defendant mistakenly believed that the money was for travel purposes only. I think that there are at least three reasons why the jury was free to conclude the defendant's false alibi was not in good faith. This court doesn't redo the jury's credibility determinations. Cheek says that a good faith defense must be presented to the jury. But the jury is absolutely free to reject it. And indeed the more unreasonable that the asserted beliefs are the more likely they are to do that. And that goes to the credibility of the witness not to the the legal aspect of whether you understood these legal definitions. And so here's there's there is a lot of evidence that the jury heard showing the defendant did not believe what he was telling agents. Start with Shenzhen University. And I think there's both a Shenzhen aspect of this and then there's kind of other other sources of income starting with Shenzhen. Agents repeatedly asked defendant whether he had a contract with Shenzhen University and defendant indicated there really wasn't. This is at page 30 and 52 of the transcript. He said not really a contract and he was shocked by that. But the jury knew that defendant's answers were false and misleading because the jury saw the contract defendant had signed. It's at GX 44. And I disagree with Mr. Winnihan's characterization of that contract. It was certainly operative. It was signed in April of 2018. And there's no explanation for why he was receiving payments from Shenzhen University apart from that contract. Jury saw it was certainly replacing an earlier contract. We'll get to that in a moment. But it was certainly an operational contract. He was paid by Shenzhen University past April of 2018. Second defendant told agents that the money from Shenzhen University was not income but was only for travel. This is defendant's distinction. So if it was income of course I would have checked yes. But the contract GX 44 at 9 that the defendant signed says the contract says that Shenzhen University will withhold income tax for defendant. So while he is paying income tax to China he is telling agents that he doesn't know that the money is income. In fact defendant himself and this is GX 11 abandoned the position he took with agents when he belatedly disclosed this income to his primary employer. He tells me his employer in April of 2020 after this interview I had income from a teaching engagement at Shenzhen University and I've been getting that since 2016. He refers to it as income in 2016 forward. And finally the jury was free to reject his explanation of Shenzhen University because defendant claimed to agents that he really hadn't done much for Shenzhen University. There was COVID and couldn't make it over there and all the rest of this. But the jury saw defendants 2017 2018 report to doing to fulfill the terms of the contracts that I have signed with Shenzhen University. He talks about all the papers that he has that he has published on behalf of the university and with Shenzhen faculty. He's talked about the classes that he was teaching at Shenzhen University to Shenzhen students and to Shenzhen faculty. The jury rationally could conclude that he wasn't doing all of that work for free. That when you see work claim work is being done and payments coming back from the university that that's income and that's confirmed by the contract that they saw. And third quite aside from Shenzhen University that the jury was free to reject this false alibi because defendant Zhao had income from other sources put into this same account at Ping An Bank as well. And he never pretended that that money from other sources was somehow not hit. Such sites referred to this earlier but exhibits 21 and 25 are emails from the defendant sending his bank account information referring to it as his account acknowledging that it's his account and that he's the only account holder. He says here's the information from my bank account in China. And after the interview and after the interview with agents in GX 11 he tells his employer Southern Illinois University that he had received about $30,000 from Chi through a shell company that Chi had set up in China. And that's confirmed by the bank records we have GX 91 which show a large number of deposits from a company in Foshan In China. Frankly defendants actions speak louder than his self serving excuses to agents and juries are free to reject that kind of false alibi in this court doesn't weigh credibility on appeal. But for these reasons I think that the willfulness arguments raised by the defendant do not stand on appeal. They are self contradictory. They are based on the way to go to wait and credibility. Do not go to the jury not to the sufficiency of the evidence. The court has no further questions on the other arguments raised by the defendant on appeal. And I'd like to ask you just about the theory of fundamental ambiguity here. Obviously these statutes and regulations Are intended to Address a wide variety of situations. A lot of Find in the world to try to find ways around them. And so they are complicated. At least in some situations. What's your, I will say, let me just say, please don't tell me that you think the issue was waived. I think it was raised sufficiently in the motion to dismiss the indictment, but I'd like you to give us your, your view on the fundamental ambiguity problem. Absolutely, Judge. So fundamental ambiguity, this court is referred to, or of course referred to as a very rare exception. Ambiguity is a jury question. And any ambiguity in that question certainly went to the jury and the jury made a decision here. And would it be reasonable to think about this in terms of ambiguity as applied rather than in the abstract. That is, I mean, all of us can all of us on this in the zoom meeting are capable of dreaming up hypotheticals in which these would be difficult to apply. But I would think, at least as I think about this case. The question is, are they ambiguous as applied to the facts of Dr. Zhao's account and his use of it. Right. I think there's two questions there about as applied. The first is what's the standard. It's it's it's a reasonable taxpayer standard. Right. It's not subjective in that sense. But I do think that you are correct. The question that this is a question that millions of taxpayers answer every year. They don't have a problem answering this question. And it's possible to dream up a situation where there is enough shell companies and enough intervening individuals that it might be a close call. That's why the definitions of signature authority and financial interest are so long because there are situations where you have multiple entities, multiple individuals. This isn't that case. This is as straightforward of an instance of having a foreign bank account as you can get. He's the only account holder and he's the only one using the account. And you can see this throughout. As a quick aside, three examples of defendant using the account. He repeatedly uses the account for his we pay account to withdraw money for we pay, which is kind of like a Google pay or an Apple pay. Second, there's a nine thousand dollar payment to a Mr. Chen in 2019. And third, as referred by Judge Sykes, there's a significant transfer of about sixty seven thousand dollars in April of 2019. That's all in GX91. So when you look at this account, there is no way that this question can be ambiguous, let alone fundamentally ambiguous as applied to Dr. Zhao because it's it's the this is the easy case. He has an account. He's the account holder. Full stop. To give an example, Judge, of where this court has drawn that line between a jury question and a fundamental ambiguity, look at the court's decision in Martellano. In Martellano, the question was, did you ever have occasion to accept wagers on sporting events? And the court pointed out, the problem with this question is the first half of it is in the singular and the second half is in the plural. And in that case, whether it's singular or plural made all the difference. The defendant answered no because he had one wager and the charge was, look, you know, you said no, you have at least one wager, false statement. And the court said, well, that ambiguity goes to the jury. There's no fundamental ambiguity. So even even in a question that was as messy as that, a confusion between the singular and the plural, this court said, no, that's a jury question. It goes to the jury. It's not fundamental ambiguity. We're leagues away from that here. This is, again, a question that millions of taxpayers are able to answer every year. And there was an easy answer here. The only possible explanation the defendant offered was plainly rejected by the jury for the reasons that I explained earlier. So the courts, Judge Fagg, sorry. Yeah, I think I am not hearing any further questions. If there are no further questions, the government would urge a firmness. Thank you. All right. Thank you, Mr. Linehan. Your time had expired. But if you have some rebuttal, I'll give you a little extra time. But you're on mute still, so you'll have to unmute. Thank you. I appreciate the indulgence. I think the only thing I would add, a couple of things I'd say to this. Number one is I think that the government is mischaracterizing that employment agreement in 2018, that employment agreement and its own agent testified that it would that the current that that Dr. Zhao's current employment status at SIUC would have rendered that's that contract inoperable. The other the other piece to this is that he had been receiving the same amount deposited into that account two years prior to the two years prior to that contract. And those payments did not change after that contract. So the evidence, I think, is overwhelming that that that contract was not dictating what he was getting paid. And I think with that, I would I would I would close. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement and the court will be in recess.